# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEBORAH OWEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-08-CV-0992 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Honorable Xavier Rodriguez**
**United States District Judge**

### Introduction

Plaintiff Deborah Owen brought this action for judicial review of the final decision of the

Commissioner of the Social Security Administration (the Commissioner), determining that Owen

is not disabled for the purposes of the Social Security Act (the Act) and denying Owen's

applications for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI)

benefits.  Owen asks the district court to reverse the Commissioner's decision and to render

judgment in her favor.  In the alternative, Owen asks the district court to reverse the decision and

remand the case for further proceedings.

After considering Owen's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 19.

Commissioner's decision,[2] Owen's reply brief,[3] the record of the SSA proceedings, the pleadings

on file, the applicable case authority and relevant statutory and regulatory provisions, and the

entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C.

§ 636(b) and this district's general order, dated July 17, 1981, referring for disposition by

recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the

plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as

provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Owen exhausted her administrative remedies prior to

filing this action in federal court. Owen has applied for disability benefits several times. This

case considers the applications filed on November 18, 2004. In the applications, Owen alleged

disability based on back pain and an onset date of September 21, 2001.[5] The Commissioner

denied the applications initially and on reconsideration.[6] Owen then asked for a hearing before

---

[2]Docket entry # 20.

[3]Docket entry # 23.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 66 & 74.

[6]*Id*. at p. 23 & 26.

an ALJ.[7]  An ALJ held a hearing on September 5, 2006.[8]  The ALJ issued a decision on May 21,

2007, concluding that Owen is not disabled within the meaning of the Act.[9]  Owen asked the

Appeals Council to review the decision[10] and again applied for benefits based on back pain.[11]

The Appeals Council remanded the case to the ALJ on September 10, 2007.[12]  Because Owen's

medical record showed that Owen was diagnosed as having depression on July 1, 2004 and

because a pain management specialist recommended that Owen see a psychiatrist, the Appeals

Council directed the ALJ to evaluate Owen's mental impairment and further evaluate Owen's

mental residual functional capacity.[13]  The ALJ sent Owen for a mental examination and then

conducted a second hearing on February 29, 2008.[14]  During the second hearing, Owen

maintained that depression prevented her from working.[15]  The ALJ issued a second unfavorable

decision on May 29, 2008.[16]  Owen asked the Appeals Council to review the second decision.[17]

---

[7]*Id*. at p. 44.

[8]*Id*. at p. 1155.

[9]*Id*. at p. 361.

[10]*Id*. at p. 374.

[11]*Id*. at p. 383.

[12]*Id*. at p. 371.

[13]*Id*. at p. 371.

[14]*Id*. at p. 1127.

[15]*Id*. at p. 1131.

[16]*Id*. at p. 12.

[17]*Id*. at p. 8.

On November 14, 2008, the Appeals Council denied review, determining no reason existed for reviewing the decision.[18]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Owen filed filed this action seeking review of the Commissioner's decision on January 5, 2009, after I granted her leave to proceed in forma pauperis.[19]

## Issue Presented

Is the ALJ's decision that Owen is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[20]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible

---

[18]*Id*. at p. 8.

[19]Docket entry # 7.

[20]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[21]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

choices' or 'no contrary medical evidence.'"[22]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[23] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[24] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[25] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[26]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[27] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[22]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[23]*Martinez*, 64 F.3d at 173.

[24]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[25]*Martinez*, 64 F.3d at 174.

[26]*Id.*

[27]42 U.S.C. § 1382(a)(1) & (2).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[28]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[29]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[30]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[31]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[32]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[33]  The second step involves determining whether the claimant's impairment is severe.[34]  If it is not severe, the claimant is

---

[28]42 U.S.C. § 1382c(a)(3)(A).

[29]42 U.S.C. § 1382c(a)(3)(B).

[30]20 C.F.R. §§ 404.1520 and 416.920.

[31]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[32]20 C.F.R. §§ 404.1520 and 416.920.

[33]*Id.*

[34]*Id.*

deemed not disabled.[35]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[36]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[37]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[38]  If the claimant is still able to do her past work, the claimant is not disabled.[39]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[40]  If the claimant cannot do other work, she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[41]  Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[42]  If the Commissioner adequately points to potential alternative employment, the burden

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Id.*

[40]*Id.*

[41]*Leggett*, 67 F.3d at 564.

[42]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

shifts back to the claimant to prove that she is unable to perform the alternative work.[43]

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step four. At step one, the ALJ determined that Owen had not engaged in substantial gainful activity since her alleged onset date.[44] At step two, the ALJ determined that Owen has the following severe impairments: status post lumbar spine fusion, obesity and depression with anxiety features.[45] At step three, the ALJ determined that Owen does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[46] At step four, the ALJ determined that Owen has the residual functional capacity to perform her past relevant work as an order clerk, cashier and assembler.[47] Because Owen can perform her past relevant work, the ALJ concluded that Owen is not disabled under the Act.[48]

## C. Owen's Allegation of Error

Owen does not complain about the ALJ's consideration of her physical impairment—she complains only about the ALJ's assessment of her mental impairment. Owen complains that the ALJ determined that she had certain mental limitations even though the record contains no mental residual functional capacity assessment. Owen contends the ALJ failed to apply the

---

[43] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[44] SSA record, p. 17.

[45] *Id*. at p. 18.

[46] *Id*. at p. 19.

[47] *Id*. at pp. 21-22.

[48] *Id*. at p. 22.

proper legal standard in considering her mental impairment. Owen did not specify the applicable

legal standard.

The Commissioner's regulations require a two-step process for evaluating mental

impairments. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and

laboratory findings to determine whether the claimant has a medically determinable mental

impairment.[49] If the ALJ determines the claimant has a medically determinable mental

impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate

the presence of the impairment and document the ALJ's finding.[50] Because the ALJ's first

opinion did not address Owen's mental impairment and because the Appeals Council observed

that Owen had been diagnosed with depression, the Appeals Council remanded the case to the

ALJ to assess Owen's mental impairment. On remand, the ALJ sent Owen for a psychiatric

examination. During Owen's second hearing, the ALJ questioned Owen about the examination.

The ALJ then accomplished the first step of the process for evaluating mental impairments. The

following passage reflects the results of the first step.

> In conjunction with her disability appeal, claimant underwent a psychiatric
> evaluation by Toni Doll[i]nger, M.D., on December 3, 2007. . . . Claimant
> reported . . . anger with the Social Security Administration for not allowing
> disability benefits. Dr. Doll[i]nger noted that the claimant yelled at her during the
> interview, reported no previous psychiatric treatment, and reported current
> prescriptions of Wellbrutin and Zoloft for depression and panic symptoms. With
> respect to daily activities, claimant reported waking between 7 a.m. and 3 p.m.,
> living with children and grandchildren, and spending most of her life in a recliner
> in her bedroom. She further reported that three years prior to the current
> examination, she drank one-half gallon of alcohol every two days and used
> marijuana from 2001 through 2004 for pain control. Mental status examination

---

[49]20 C.F.R. § 404.1520a(b).

[50]20 C.F.R. § 416.920a(b)(1).

found irritable and hostile mood, some homicidal ideation [claimant reported that she wanted to "blow the face off . . . (her) . . . daughter with a bazooka"], 3/3 recall, intact sensorium, ability to do serial sevens quickly, unimpaired concentration, persistence, and pace, impaired insight and judgment, and average intelligence. Dr. Doll[i]nger diagnosed claimant as having alcohol abuse in remission per patient, marijuana abuse, and (Axis II) borderline personality disorder with histrionic and antisocial traits.
* * *
Claimant testified that Dr. Doll[i]nger's examination lasted no more than one half hour and she answered all the questions asked, although she was not in a good mood. She testified that she did not yell or get upset with [] Dr. Doll[i]nger and there was no yelling or screaming. On specific questioning with respect to the consultative psychiatric examination, claimant testified that Dr. Doll[i]nger was calm and professional.[51]

After specifying the symptoms, signs, and laboratory findings substantiating the presence of a mental impairment, the ALJ must rate and record the degree of functional limitation resulting from the impairment based on four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[52] The following passage from the ALJ's opinion shows that the ALJ accomplished this second step.

With respect to claimant's mental impairments, reviewed under the "B" criteria of section 12.04 (Affective Disorders) and 12.08 (Personality Disorders), the record supports [] that the alleged impairments cause no restriction of activities of daily living, moderate limitation in social functioning, mild to moderate difficulties for maintaining concentration, persistence, and pace, and no episodes of decompensation. Nor do the "C" criteria of listing section 12.04 apply. In this determination, the undersigned notes that the claimant is not attending psychological treatment or therapy, does not wish to attend such therapy, and is not noted by any medical provider to have disabling depression or anxiety symptoms. Significantly, although claimant is prescribed medication for depression, the consultative examination on December 3, 2007 by Dr. Doll[i]nger found unimpaired concentration, persistence, and pace, average intelligence, intact recall, and average intelligence, although claimant was noted to have impaired judgment and insight which might somewhat impair her ability to maintain

---

[51]SSA record, pp. 18-19.

[52]20 C.F.R. § 416.920a(c).

concentration for extended periods. A full assessment of claimant's mental residual functional capacity is indicated below.

\* \* \*

Claimant also has the following non-exertional limitations: moderate limitation in the ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers without distracting them or exhibiting behavioral extremes.[53]

Claimant's mental depression with anxiety features and personality disorder were fully considered in determining mental residual functional capacity determined above. Claimant has not sought treatment for mental impairments and there is no evidence to support that she is not mentally stable for gainful work with prescribed medications.[54]

Owen did not explain her assertion that the record contains no assessment of her mental residual functional capacity,[55] but she may complain that a medical professional did not assess her mental residual functional capacity. The Commissioner's regulations do not require the ALJ to obtain a residual functional capacity assessment from a medical professional. Instead, the regulations require the ALJ to "consider all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment."[56] To the extent Owen complains that the ALJ should have obtained a residual functional capacity assessment from a medical professional, the ALJ did what he was required to do. The ALJ must "make every reasonable effort to ensure that the file contains

---

[53]SSA record, pp. 19-20.

[54]*Id*. at p. 21.

[55]Docket entry # 19, p. 6; docket entry # 23, p. 2.

[56]20 C.F.R. § 404.1520a (c); 20 C.F.R. § 416.920a(c).

sufficient evidence to assess [residual functional capacity]."[57]  In this case, the ALJ sent Owen

for a psychiatric examination.  Considering the medical evidence to that point, sending Owen for

a psychiatric examination was a reasonable effort to ensure that the file contains sufficient

evidence to assess residual functional capacity.  Prior to that, the record contains only

prescriptions for psychotropic medications beginning on July 1, 2004,[58] sporadic references by

medical professionals to depression,[59] and a recommendation on January 4, 2006 by a pain

management specialist that Owen see a psychiatrist for depression/anxiety/stressors and a

psychologist experienced in treating depression with chronic pain.[60]  The ALJ applied the proper

legal standard.  Because the ALJ applied the proper standard, the only question about the ALJ's

assessment of Owen's mental impairment is whether substantial evidence supports the ALJ's

residual functional capacity assessment.

Activities of daily living.  "*Activities of daily living* include adaptive activities such as

cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence,

caring appropriately for [personal] grooming and hygiene, using telephones and directories, and

---

[57]SSR 96-8p: Policy Interpreting Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims.

[58]SSA record, p. 266 (July 1, 2004), p. 449 (June 29, 2005), p. 798 (July 26, 2005), p. 277 (Mar. 9, 2006), p. 288 (Apr. 19, 2006), p. 776 (Dec. 6, 2006) & p. 487 (Apr. 3, 2007).

[59]*Id*. at p. 284-94 (evaluation by pain management specialist on Jan. 4, 2006, indicating Owen was moderately depressed and reporting that Owen was very frustrated because she had been unable to obtain disability benefits); *id*. at p. 422 (note by primary care doctor on Sept. 26, 2006, about situational depression); *id*. at p. 776 (note by primary care doctor on Dec. 6, 2006, reading "depression"); *id*. at 507 (note by new primary care doctor on Aug. 27, 2007, indicating "no depression, anxiety, or agitation, clam and appropriate").

[60]*Id*. at p. 284-94 (recommending that Owen see a psychiatrist for depression/anxiety/stressors and a psychologist experienced in treating depression with chronic pain).

using a post office."[61]  The ALJ found that depression caused no restriction of Owen's daily

activities.  Substantial evidence supports this finding.  On November 18, 2004 when Owen

applied for benefits, she did not state that depression restricted her daily activities.  Instead, she

has consistently claimed that back pain restricts her daily activities.  At her first hearing, Owen

testified that she lived with her unmarried son, unmarried daughter and three grandchildren.  She

testified that she vacuums the apartment, washes dishes and cooks dinner for the family.[62]  She

explained that she takes care of her own grooming, but she does not take baths because she

cannot get out of the bathtub.[63]  Owen did not attribute disability to depression until her second

hearing.[64]  When questioned about why she had not seen a psychiatrist or a psychologist, Owen

responded that she was referred to downtown doctor and her mother would not drive her

downtown.[65]  She stated that she would love to see a psychiatrist if she could see one near the

medical center.[66]  She had made no effort to obtain a referral for a psychiatrist near the medical

center since being assigned to a new primary care doctor.  Owen explained that being unable to

help her son financially depresses her and that it was stressful to live with her bipolar daughter.[67]

During the second hearing, Owen stated that things were better because her son had told her

---

[61]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C1.

[62]SSA record, p. 1162.

[63]*Id*.

[64]*Id*. at p. 1131.

[65]*Id*. at p. 1138.

[66]*Id*. at p. 1147.

[67]*Id*. at pp. 1141-42.

daughter to move out because she was pregnant again.[68]  She explained that she does not drive

because she does not see well out of her left eye.[69]  Owen testified that she takes care of her

three-year-old granddaughter while her son works.[70]  A finding that depression causes no

restriction of Owen's daily activities reasonably follows from this evidence because the evidnce

shows that Owen performs a variety of daily activities.[71]

      Social functioning.  "Social functioning refers to the claimant's capacity to interact

independently, appropriately, effectively, and on a sustained basis with other individuals.  Social

functioning includes the ability to get along with others, such as family members, friends,

neighbors, grocery clerks, landlords, or bus drivers."[72]  The ALJ found that depression caused

moderate limitation in social functioning.  Substantial evidence supports this finding.  During her

second hearing, Owen testified that it was hard to enjoy time with friends and family because she

does not go anywhere.  She explained that she has no friends because every time friends want her

to do something with them or to go somewhere with them like the coast or the lake, she cannot

go because she cannot sit in a car all day.[73]  Owen stated that her back pain caused her to have

---

[68]*Id*. at p. 1141.

[69]*Id*. at p. 1165.

[70]*Id*. at p. 1133.

[71]SSR 85-16 Titles II & XVI: Residual Functional Capacity for Mental Impairments ("In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strengths and weaknesses.").

[72]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C2.

[73]SSA record, pp. 1140-41.

absolutely no life.[74]  She stated that two or three times a week she gets depressed and goes to her room to be by herself.[75]  Despite a lack of friends, Owen completes all grocery shopping for the family without incident.  A finding that depression causes moderate limitation in social functioning reasonably follows from this evidence because although Owen is able to interact with others, back pain prevents her from socially with others on a regular basis.[76]

　　　Concentration, persistence, or pace.  "Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."[77]  The ALJ found that depression caused mild to moderate difficulties for maintaining concentration, persistence, and pace.  When Dr. Nicholas Walsh—Owen's primary care doctor—examined Owen on September 17, 2007, he assessed Owen's attention span as "intact."[78]  After the psychiatric examination on December 3, 2007, Dr. Toni Dollinger reported that Owen could do serial sevens very quickly (93, 86, 79, 72, 65, 58, 51, 44, 37).[79]  Dr. Dollinger characterized Owen's concentration, persistence and pace as unimpaired.[80]  The pain management specialist and Dr. Dollinger both

---

[74]Id. at p. 1140.

[75]Id. at p. 1138.

[76]SSR 85-16 Titles II & XVI: Residual Functional Capacity for Mental Impairments ("In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strengths and weaknesses.").

[77]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C3.

[78]SSA record, p. 507.

[79]Id. at p. 919.

[80]Id. at 920.

characterized Owen as irritable, agitated, and frustrated that she had not been awarded disability benefits.[81] A finding that depression causes mild to moderate difficulties in concentration, persistence and pace reasonably follows from this evidence because although medical professionals have found Owen's concentration unimpaired, Owen's hostility about not being awarded disability benefits could interfere with her ability to complete tasks commonly found in work settings on a sustained basis.[82]

Episodes of decompensation. The Commissioner's regulations provide the following about episodes of decompensation:

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).[83]

The record contains no evidence of decompensation.

Substantial evidence supports the ALJ's determination that Owen's mental impairment does not prevent her from performing substantial gainful activity. The evidence suggests that the need to care for her unmarried son's daughter may prevent Owen from working, but the evidence does not indicate that Owen is unable to work because of a mental impairment. Owen is not disabled under the Act.

---

[81]*Id*. at pp. 290 & 917-18.

[82]SSR 85-16 Titles II & XVI: Residual Functional Capacity for Mental Impairments ("In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strengths and weaknesses.").

[83]20 C.F.R. pt. 404, subpt. B, app'x I,§ 12.00C4.

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Owen's request for relief (docket entry # 7) and AFFIRMING the Commissioner's decision.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[84] **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[85] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

---

[84]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[85]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[86]

   **SIGNED** on January 7, 2010.

_Nancy Stein Nowak_
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[86]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).